IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 4:05-cr-00073-UNA-RAW |
| Plaintiff, | ) | |
| | ) | MEMORANDUM FINDINGS |
| vs. | ) | IN CONNECTION WITH |
| | ) | DETENTION ORDER |
| MAURICE A. WRIGHT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

This matter came on for detention hearing on May 13, 2005. The government appeared by Assistant U.S. Attorney Kevin VanderSchel. Defendant was represented by Assistant Federal Defender Tim Ross-Boon.

The government moves for detention under the authority of 18 U.S.C. § 3142(f)(2)(A), (B) on the basis that there is a serious risk defendant will flee and a serious risk that he will obstruct or attempt to obstruct justice by intimidating or harming prospective witnesses.[1]

Defendant is charged in a six-count indictment with mail fraud. For the most part the charges deal with fraudulent automobile insurance claims. The charges result from a lengthy investigation. Allegedly, commencing in about 1997 defendant has engaged in a scheme to defraud in connection with over 100 automobile insurance claims involving more than fifty vehicles. Count 6 of the indictment also charges defendant with submitting a

---

[1] Because defendant has more than two convictions for crimes of violence, the government could also have moved for a detention hearing under 18 U.S.C. § 3142(f)(1)(A), (D).

fraudulent disability insurance claim resulting from a reported injury in a motor vehicle accident.

The government states that defendant, or one acting for him, would report an accident to an insurance company, and a short time later report another accident to a different insurance company involving the same vehicle and damage. Some of the vehicles were acquired by defendant with pre-existing damage, for which defendant submitted claims.

The government has spoken with persons it describes as defendant's associates in the alleged scheme to defraud. One of these, Brandy Waters (with whom defendant has a child) has cooperated with the authorities and expressed fear of defendant. She has told the authorities she has seen defendant with a gun. Another cooperating witness has also said she has seen defendant with a gun. According to Waters, defendant told her that "when they come for him he will shoot & then kill himself." (Ex. 5). Waters has also said she engaged in prostitution on defendant's behalf.

Defendant has used different names and reported different addresses. He told the pretrial services officer that he resided at 4204 Commerce Drive in West Des Moines with Ms. Waters. However, Ms. Waters says that she has not lived with defendant since November 2003 and that he moved out of the Commerce Drive address at that time. In fact, the Commerce Drive residence is currently gutted for remodeling and no one lives there. Waters' father owns

the residence and has told authorities that it has been at least a year since Wright lived there. Defendant is listed on the Iowa Sex Offender registry. His residence listed on the registry is the Commerce Drive address (Ex. 1) and his most recent registry verification of address form submitted June 4, 2004 states, apparently falsely, that he lives at that address. There is evidence that state criminal proceedings are in the offing concerning the false registry address provided by defendant. There was testimony that the Polk County Attorney has sought a warrant for defendant's arrest in connection with the matter.

Defendant had a current Colorado driver's license in his possession listing an address in Aurora, Colorado. Postal authorities have indicated that no mail has been received for defendant at that address. (Ex. 2).

Defendant secured a loan from the Stern Finance Company in December 2004. (Ex. 3). Defendant's address given to the finance company is 668 - 27th Street in Des Moines, the residence of defendant's wife, Vanetta Wright, from whom defendant has been separated for the past thirteen years.

Defendant and Vanetta Wright filed a bankruptcy petition dated June 11, 2004. The petition lists defendant's address as 1305 Stewart in Des Moines. (Ex. 4).

The bankruptcy petition states that defendant's current income is $450 a month, and states that in 2002 he earned $8,000

from Mike's Auto Sales, $5,500 in 2003 from miscellaneous odd jobs, and $2,700 in 2004 from miscellaneous odd jobs. This employment information differs from what defendant told the pretrial services officer. The government states that defendant has not had full-time employment for the past five years.

Defendant is 40 years of age and has resided in the Des Moines area since about 1981. His father is deceased and he apparently does not have much contact with his mother. A brother and a sister reside in Des Moines, two sisters in Illinois, a brother in Nebraska, a sister in Fort Dodge, another sister in Colorado, and a sister in Florida. Defendant has two other siblings, brothers who are in prison.

Defendant has a felony criminal history extending back to November 1984. He has at least six felony convictions, all in the Des Moines area: burglary in the second degree, November 16, 1984 (ten years suspended sentence); escape, apparently also in November 1984 (five years suspended); burglary in the second degree and theft in the second degree, October 1986 (ten years and five years prison from which defendant was paroled in December 1988); escape in 1988 (five years prison concurrent with preceding burglary and theft convictions); assault with intent to commit sexual abuse and burglary in the third degree, April 1999 (two years and fifteen years prison, suspended). Part of the scheme to defraud and most of

4

the specific offenses alleged in the indictment occurred while defendant was on probation from the April 1999 conviction.[2]

By proffer defendant states that upon release he can reside with his wife, Vanetta, or alternatively, with Michelle Powley (phonetic), a friend who also lives in Des Moines. Defendant denies carrying weapons or threatening Brandy Waters. He also alternatively proposes placement in a halfway house.

The relevant factors which guide the Court's decision are set out in 18 U.S.C. § 3142(g). The nature and circumstances of the offenses charged involve fraudulent conduct on repeated occasions over a lengthy period of time. The weight of the evidence is difficult to gauge on this record. Defendant's character is not a positive factor. Though he has family ties in the area, the Court does not believe they are of the kind or to the extent that would be a deterrent either to flight or attempts to obstruct justice. Defendant has not had significant employment for many years and beyond the length of residence, his community ties are insubstantial.

It is appropriate to regard defendant as a career criminal. That career reflects numerous convictions for crimes

---

[2] Though the indictment alleges a lengthy scheme involving many fraudulent acts, the six counts expressly charged are for occurrences on August 11, 2000; October 2, 2000; October 9, 2000; October 31, 2000; June 6, 2001; and November 16, 2000. Thus at the time of five of the six current offenses defendant was on probation, an express statutory factor against release. 18 U.S.C. § 3142(g)(3)(B).

involving dishonesty which, together with the nature of the current offenses and evidence of false statements to the pretrial services officer, the bankruptcy court, and Iowa authorities, compel the conclusion that any promises by defendant to abide by conditions of release cannot be given credence. His convictions for numerous crimes of violence, including specifically the assault with intent to commit sexual abuse, indicate defendant is capable of violence. The convictions for escape are probative of a risk of flight.

The principal witness against defendant appears to be Ms. Waters. The record provides reason to believe that defendant has influenced Ms. Waters to assist in the alleged fraudulent scheme, he has influenced her to engage in prostitution for him, and Ms. Waters is afraid of him. The circumstances, considered in light of defendant's criminal history and nature of the relationship between defendant and Ms. Waters, convince the Court that if released defendant is likely by threats or intimidation to attempt to obstruct justice by influencing Ms. Waters' testimony.

There is no reason to believe that defendant's residence with his wife or Ms. Powely would have any influence over defendant's conduct, nor does the Court believe defendant would be likely to abide by the rules of a halfway house. Indeed it is probable he would attempt to manipulate those rules to his advantage.

For the reasons indicated, I have found that the government has clearly and convincingly established that defendant is a serious risk of flight and a serious risk to obstruct justice and that there are no conditions of release which would provide reasonable assurance against either eventuality. The Court has also concluded that no condition or combination of conditions of release will reasonably assure the appearance of defendant and the safety of Ms. Waters and the community. 18 U.S.C. § 3142(e).[3]

Dated this 16th day of May, 2005.

ROSS A. WALTERS
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[3] Regardless of the basis on which the Court grants a detention hearing, the Court can detain a defendant only upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142(e).

7